**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **GREGGORY BLANK,** | |
| **Plaintiff** | **CASE NO. 2:19-cv-00018-JLG-CMV** |
| **v.** | **Judge James L. Graham** |
| **NATIONWIDE CORPORATION, et al.,** | **Magistrate Judge Chelsey M. Vascura** |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment as to Plaintiff's Claims on Behalf of Defendant Nationwide Mutual Insurance Company ("Nationwide") and Individually Named Defendants Penwell and Glinski (collectively, "Defendants"). (ECF No. 41.) For the reasons that follow, Defendants' motion is **GRANTED**.

## I.     BACKGROUND

Plaintiff Greggory Blank, with the assistance of counsel, brings this action against his former employer, Defendant Nationwide and two of his former subordinate managers, Defendants Devin Penwell and Laura Glinski.  Plaintiff asserts several claims for: 1) reverse discrimination (Defendant Nationwide); 2) retaliation (Defendant Nationwide); 3) violation of Ohio public policy (Defendant Nationwide); 4) disability discrimination (Defendant Nationwide); 5) defamation (Defendants Penwell and Glinski); 6) age discrimination (Defendant Nationwide); 7) intentional interference with employment relationship (Defendants Penwell and Glinski); 8) hostile work environment (Defendant Nationwide); and 9) FMLA interference with rights (Defendant Nationwide).

Plaintiff began his employment with Nationwide in 2010 and was promoted to Associate

1

Director of Specialty Material Damage Claims in 2014. (Blank Dep. 29, ECF No. 43.) In his Associate Director role, Mr. Plaintiff supervised six claims managers, including Defendants Penwell and Glinski. (*Id.* at 54–55.)

On February 28, 2018, Defendants Penwell and Glinski were discussing Defendant Penwell's upcoming jury duty. (Defs.' Ex. D, Penwell Dep. 124, ECF No. 41-1; Blank Dep. 93–95.) Plaintiff interjected with a story about jury duty. (*Id.*)

The parties offer differing accounts of Plaintiff's story. Plaintiff claims he said that to avoid jury duty, all one had to do was "show up and ask, 'Okay, where are these people you want me to hang?'" (Blank Dep. 94–95), whereas Defendants Penwell and Glinski claim he replaced "these people" with a highly offensive racial slur (Defs.' Ex. F, Anand Dep. Ex. 47, ECF No. 41-1 at 555.) Whatever the content of Plaintiff's story, the parties agree that his remarks offended Defendant Penwell. (Blank Dep. 95, 102.)

Soon after, Defendant Penwell reported Plaintiff's remarks to Director, Matthew Hawk. (Penwell Dep. 126.) Mr. Hawk advised Defendant Penwell to report the incident to Nationwide's Office of Associate Relations ("OAR"). Mr. Hawk told Defendant Penwell that if he did not report the incident himself, then Mr. Hawk would be obligated to make the report pursuant to Nationwide policy. (Defs.' Ex. E, Hawk Dep. 17, ECF No. 41-1 at 546.)

On March 7, 2018, Defendant Penwell reported Plaintiff's conduct to OAR in accordance with Nationwide's "No Harassment, Discrimination, or Retaliation Policy." (Ex. 47, ECF No. 41-1 at 555.) When interviewed by OAR, Defendant Glinski confirmed Plaintiff's offensive statement. (*Id.* at 558.)

While the OAR investigation was underway, Plaintiff separately met with Defendants Penwell and Glinski concerning their 2017 performance evaluations. (Blank Dep. 111, 114.)

2

Defendant Penwell received an "overall successful" rating, and Plaintiff rated Defendant Glinski's "overall performance as strong." (*Id.* at 66, 70–71.)  Plaintiff did not raise any performance concerns during his one-on-one meetings with either subordinate manager.

On March 21, 2018, OAR Senior Consultant, Seema Anand, interviewed Plaintiff about his jury duty comments. (Defs.' Ex. A, ECF No. 41-1 at 505.)  Plaintiff denied using the racial slur and said his comments must have been taken "out of context." (Blank Dep. 94.)  After considering Plaintiff's long-term history at Nationwide, Ms. Anand closed the case file that same day. (ECF No. 41-1 at 558.)

Plaintiff was not disciplined for the alleged racial slur.  Ms. Anand reminded Plaintiff of Defendant Nationwide's no retaliation policy (Pl.'s Ex., ECF No. 70 at 2605), which assures employees, "that there will be no retaliation against you for making a complaint with the reasonable belief that harassment or discrimination or a violation of this policy occurred, or for participating in an investigation." (ECF No. 41-1 at 533.)  The policy further states, "Violations of this policy will result in disciplinary action, up to and including termination of employment." (*Id.*)

Immediately after learning about the complaint against him on March 21, 2018,[1] Plaintiff emailed Defendant Penwell the following morning, requesting a detailed update on a pilot project that had been underway for several months. (Blank Dep. 118–19.)  It was the first time Plaintiff had requested an update since the project's initiation. (*Id.* at 124.)  During their email exchange, Plaintiff criticized Defendant Penwell's performance, relayed that the project would be "captured as part of his ongoing performance," and stated on a Friday afternoon that he would "pull the project" from Defendant Penwell if he did not provide Plaintiff with a detailed information by 8:00

---

[1] Plaintiff admits that during his interview with Ms. Anand, he "had an idea that [the complaint] could have been brought up by either Devin or Laura." (Blank Dep. 93–94.)

AM the following Monday. (*Id.* at 120–22.)

On March 23, 2018, Defendant Penwell contacted Ms. Anand regarding possible retaliation from Plaintiff for reporting his comments to OAR. (ECF No. 41-1 at 558.)

On March 23, 2018, Plaintiff emailed Defendant Glinski concerning his recent review of claims denial letters issued by her team.  (Ex. 4, Blank Dep., ECF No. 43 at 914.)  As a claims manager, Defendant Glinski supervised several claims adjustors and routinely reviewed their work to ensure adherence to quality standards.  In his email, Plaintiff asserted that 40% of the letters Defendant Glinski's team issued contained grammatical errors and emphasized that he had taken steps to help Defendant Glinski improve her proofreading skills and coach her associates to communicate professionally in writing, including using spell check.  (*Id.*)  Plaintiff commented that "the results of my review suggest there has been more recent degradation and additional focus is needed" and that the grammatical errors had "the potential to impact [Glinski's] performance in 2018." (*Id.*)  Plaintiff concluded his email by stating that effective the following Monday, Defendant Glinski would send him all claims denial letters she reviewed until she could achieve an "adequacy of 90% or better." (*Id.* at 914–15.)

On March 28, 2018, Plaintiff emailed Defendant Glinski concerning his first review of one of her team's denial letters.  Plaintiff begins his email, "This is the reason your denials are under review" and criticized the denial letter's omission of a weather-related insurance exclusion.  (Ex. 5, Blank Dep., ECF No. 43 at 923.)  Defendant Glinski responded by sharing the results of her team's weather research and belief that the exclusion should not be included in the letter. (*Id.*) Plaintiff replied, "Your approach to this process is raising significant concerns, and runs counter to the performance value of understanding the importance of coaching and feedback." (*Id.* at 916.) Plaintiff continued, "[W]hether or not these specific exclusions directly apply, their presence in

the explanation does not hurt our position, so logic should tell you to document them as asked by leadership." (*Id.* 916–17.) Finally, Plaintiff warned, "You can document the denial as I have explained, or I can contact the Office of Associate Relations to discuss insubordination. Please let me know what you decide." (*Id.* at 917.)

On March 26 and 28, 2018, Defendant Glinski contacted Ms. Anand concerned that Plaintiff's harsh emails constituted retaliation. (ECF No. 41-1 at 493.)

On April 2, 2018, Ms. Anand had a conference call with Cathy Hiner, Associate Vice President of Claims; April Compton, Senior Director of OAR; and Amy Spellman, Human Resources Director to discuss Plaintiff's recent communication with Defendants Penwell and Glinski following their OAR report about Plaintiff's jury avoidance comments. Later that evening, Plaintiff was placed on paid administrative leave while OAR investigated the retaliation claims. (ECF No. 41-1 at 557.)

Ms. Anand reviewed all of Plaintiff's recent communications with his subordinates and found his emails to Defendants and Glinski "particularly pointed" following their complaint against him. (*Id.*) She also considered prior complaints made by other employees concerning "inappropriate comments" Plaintiff made and his tendency to "hold grudges." (*Id.* at 556.) After examining Defendants Penwell and Glinski's favorable work performance history and the timing of Plaintiff's emails, Ms. Anand believed there was strong evidence to support Defendants Penwell and Glinski's allegations that Plaintiff retaliated against them for reporting his conduct to OAR. (*Id.*) As a result, OAR recommended that Plaintiff receive a final written notice ("FWN") and demotion to a non-leadership position. (*Id.* at 557.) After considering all of the evidence, Plaintiff's leadership team and Defendant Nationwide's Human Resources Department supported OAR's recommendation for an FWN and demotion. (ECF No. 41-1 at 556.)

5

On April 9, 2018 at 9:50 AM, Ms. Anand called Plaintiff to discuss his alleged retaliation against Defendants Penwell and Glinski. (*Id.*)

Later that morning, Plaintiff filed an FMLA request at 11:44 AM. (*Id.*)

During a scheduled 2:00 PM phone call later that afternoon, Plaintiff was demoted to a non-managerial position as a Specialist III Adjustor in the Total Loss Express Innovation division but maintained his previous salary and could work from home. (Blank Dep. 31, 158, 234.)

In January 2019, Defendant Nationwide shared its plan for a reduction in force affecting numerous employees in multiple business units, including the Total Loss Express team that Plaintiff worked on. (Blank Dep. 34–35.)  Plaintiff received notice in January 2019 that his position was being eliminated effective April 15, 2019. (*Id.* at 36.)

Plaintiff filed suit on January 3, 2019, arguing that there was no legitimate basis for either his demotion or discipline. (ECF No. 1.)

Plaintiff was terminated from Defendant Nationwide on April 15, 2019.

Defendants filed their motion for summary judgment on May 28, 2020.  It is fully briefed and ripe for adjudication.

## II.     STANDARD OF REVIEW

Defendants have moved for summary judgment on each of Plaintiff's claims under Federal Rule of Civil Procedure 56.   Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt,* 586 F.3d 459, 465 (6th Cir. 2009).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record,

"which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum,* 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis,* 489 F.3d at 279–80 (quoting *Anderson,* 477 U.S. at 251–52).

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Federal Rule of Civil Procedure 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed [to] support [that] assertion by citing to particular parts of materials in the record." Thus, "the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) (internal quotations and citations omitted).

## III.   DISCUSSION

### A.  Title VII Claims (Counts One, Two, and Eight)

As an initial matter, Plaintiff cannot pursue his Title VII claims for reverse discrimination, retaliation, and hostile work environment,[2] because there is no record evidence that he first filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Before filing Title VII claims in federal court, "a plaintiff must [first] exhaust [his or her] administrative remedies."  *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).  Specifically, "an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts."  *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 361–62 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)).  Here, there is no record evidence that Plaintiff ever filed an EEOC charge of discrimination.  Therefore, Plaintiff cannot proceed on his Title VII claims, because he has not first exhausted his administrative remedies, and summary judgment is warranted on these claims.

### B.  Age Discrimination Claim (Count Six)

Similarly, Plaintiff's federal age discrimination claim is also foreclosed as a matter of law. Though Plaintiff initially fails to specify the statute applicable to his age discrimination claim in his complaint, his response in opposition to Defendants' motion states that his age discrimination claim is brought under "the Age Discrimination in Employment Act ("ADEA")," 29 U.S.C. §§ 621–634.  (ECF No. 65 at 2407.)  As a condition precedent to filing an ADEA claim in federal court, an employee must first file a charge of discrimination with either the EEOC or Ohio Civil

---

[2] Although Plaintiff references an alleged "hostile work environment" three times in his response in opposition to Defendants' motion, he fails to respond to Defendants' summary judgment arguments concerning his hostile work environment claim and is deemed to have abandoned that claim. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."  *Brown v. VHS of Mich., Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim)).

Rights Commission. [3] *Flint v. Mercy Health Partners*, 940 F. Supp. 2d 743, 747 (S.D. Ohio 2013).

Here, Plaintiff points to no record evidence indicating that he first filed a charge of discrimination with either the EEOC or the Ohio Civil Rights Commission.  Thus, his age discrimination claim is foreclosed as a matter of law and summary judgment is also warranted on this claim.

### C.  Intentional Interference with Employment Relationship (Count Seven)

Defendants argue that Plaintiff has also abandoned his intentional interference with employment relations claim against Defendants Penwell and Glinski, because he makes no effort to address this claim in his response in opposition to their motion.  The Court agrees.  As Plaintiff fails to address Defendants' summary judgment arguments concerning his intentional interference with employment relations claim against Defendants Penwell and Glinski, he is deemed to have abandoned that claim. *Brown v. VHS of Mich., Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013).

Accordingly, Defendants Penwell and Glinski are entitled to judgment as a matter of law on Plaintiff's intentional interference with employment relationship claim.

The Court now turns to Plaintiff's remaining claims.

### D.  Public Policy Claim (Count Three)

Plaintiff claims that he was disciplined in violation of public policy, and that Defendant Nationwide lacked a legitimate business justification for his demotion. (Compl. ¶¶ 59–60, ECF No. 1 at 18.)  In his response in opposition to Defendants' motion, he argues that he has presented sufficient evidence to present a public policy claim, because he is a member of multiple protected

---

[3]  The ADEA requires a claimant to first exhaust his or her state administrative remedies. 29 U.S.C. § 633(b).  Ohio is a "deferral state" under the ADEA, and a claimant may therefore file a charge of discrimination with Ohio's state agency, the Ohio Civil Rights Commission ("OCRC"), and properly exhaust his or her administrative remedies under the statute.  As a deferral state, any charges filed with the EEOC are also automatically deemed dual-filed with the OCRC, as Ohio Admin. Code § 4112-3-01(D)(3) deems a filing with the EEOC to be contemporaneously filed with the Ohio Civil Rights Commission.  *Flint*, 940 F. Supp. 2d at 744.

classes, and that multiple federal statutes are implicated in this suit. (ECF No. 65 at 2410.)  It is also in his response brief that he alleges for the first time that he was "*discharged . . . in contravention of a clear public policy*. (*Id.*) (internal quotations omitted) (emphasis added).

Plaintiff's complaint alleges, "Defendant's [sic] *discipline* of the Plaintiff jeopardizes the public policies outlined above" and "Plaintiff's *demotion* was motivated by conduct related to the public policies set forth herein.[4] (ECF No. 1 at 18) (emphasis added.)  To plead a cognizable claim under Ohio law, Plaintiff would have to move for leave to amend his complaint to allege that he was discharged in violation of public policy.  The Court's docket reflects that he has not done so.

Even if Plaintiff had amended his complaint, a wrongful discharge claim in violation of Ohio public policy, requires a showing that: 1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law" (the *clarity* element); 2) "that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy" (the *jeopardy* element); 3) "the plaintiff's dismissal was motivated by conduct related to the public policy" (the *causation* element); and 4) "the employer lacked overriding legitimate business justification for the dismissal" (the *overriding justification* element).  *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 956 N.E.2d 825, 829 (2011) (internal quotation marks omitted) (italics in original).

The clarity and jeopardy elements are issues of law for a court's determination.  *Id.* Defendants argue that Plaintiff cannot satisfy the jeopardy element, as he has adequate statutory remedies to protect his interests.  The Court agrees.

---

[4] "A party is free to move for leave to amend, even after a motion for summary judgment has been made by the opposing party, and the ordinary standards of [Fed. R. Civ. P. 15(a)] apply to the court's determination whether to allow amendment, i.e., 'leave shall be freely given when justice so requires.'" *Byrne v. Wood*, Civil Action No. 2: 08-102-DCR, 2009 U.S. Dist. LEXIS 19971, at *10-11 (E.D. Ky. Mar. 10, 2009) (quoting *Verhein v. S. Bend Lathe, Inc.*, 598 F.2d 1061 (7th Cir. 1979)).

In addressing the jeopardy element, the Supreme Court of Ohio determined that "when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy." *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 875 N.E.2d 36, 42 (2007). Accordingly, "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Id.*

In the case at bar, Plaintiff cites to several federal statutes, including Title VII, the ADEA, the ADA, and the FMLA to support his claims. (ECF No. 65 at 2410.) He brings each of his claims either under these statutes or Ohio's counterpart statutes. Accordingly, because these statutes provide a remedy to Plaintiff, he cannot maintain a separate claim for wrongful discharge in violation of public policy, premised on these statutes. The Court therefore finds as a matter of law that Plaintiff has failed to establish the jeopardy element of any potential wrongful discharge in violation of public policy claim, and Defendant Nationwide is entitled to judgment as a matter of law on Plaintiff's claim.

## IV. Disability Discrimination (Count Four)

Plaintiff brings his disability discrimination claim pursuant to Ohio Revised Code § 4112.02, claiming that he suffers from severe and chronic fibromyalgia, Defendants had knowledge of his condition, and that he was demoted and replaced by a non-disabled, less experienced employee. (Compl. ¶¶ 63–66, ECF No. 1 at 18.)

To establish a prima facie case of disability discrimination under Ohio law, Plaintiff must show: (1) that he was disabled; (2) that his employer took an adverse employment action against him, at least in part[] because he was disabled; and (3) that he could safely and substantially

perform the essential functions of the job in question despite his disability.  *Stanley v. Bp Prods. N. Am.*, 753 F. App'x 378, 382-83 (6th Cir. 2018) (citing *Stewart v. Bear Mgmt., Inc.*, 2017-Ohio-7895, 98 N.E.3d 900, 904 (Ohio Ct. App. 2017)).

Ohio law defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." Ohio Revised Code § 4112.01(A)(13).

Defendants argue that Plaintiff's disability claim fails, because he cannot demonstrate that his fibromyalgia substantially limited one or more major life activities, and he therefore cannot establish a "disability" as defined by § 4112.01(A)(13).

Though Plaintiff claims he experienced significant pain and chronic fatigue beginning late 2016/early 2017 (ECF No. 70 at 2610) and was ultimately diagnosed with fibromyalgia on April 5, 2018 (ECF No. 65 at 2409), he presents no evidence that his medical condition substantially limited one or more major life activities.  On the contrary, Plaintiff testified that he worked until his April 2018 diagnosis and drove fifty-five miles to work each way on an almost daily basis. (Blank Dep. 185–87.)  He further testified that his condition did not prevent him from performing any work-related tasks, nor did it hinder his job performance. (*Id.* at 188–89.)

Only when faced with Defendants' motion does Plaintiff respond with a post-deposition affidavit to support his claim, where he states for the first time that, "Because of my fibromyalgia I have difficulty sleeping, walking, eating, concentrating, performing any form of aerobic exercise.  I have crushing exhaustion it seems like daily." (Blank Aff. ¶ 41, ECF No. 72 at 2688.) The Sixth Circuit has long held that, a "'party may not create a factual issue by filing an affidavit,

12

after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony.'" *Bush v. Compass Grp. USA, Inc.*, 683 Fed. App'x 440, 448 (6th Cir. 2017) (quoting *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir. 1986)).

When deciding the admissibility of a post-deposition affidavit at the summary judgment stage, a district court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). During Plaintiff's deposition, Defendants' counsel asked Plaintiff if there was something he could not do because of the pain and if his condition affected his day-to-day activities. (Blank Dep. 188–89.) Plaintiff responded that he "continued, to the best of my abilities, to come in and work just like I worked and to support my team just like I had always supported my team" and did not "feel[] my performance diminished during that time." (*Id.*)

Plaintiff's affidavit claiming difficulties sleeping, walking, eating, concentrating, performing exercise, and crushing daily exhaustion directly contradicts his prior sworn testimony, where he fails to identify any limitations on any major life activities and states that he continued working as he always had without any impact on his performance. As Plaintiff may not create a factual dispute at the summary judgment stage with a contradictory post-deposition affidavit, the Court declines to consider the contradictory statements in Plaintiff's post-deposition affidavit.

Even if Plaintiff could establish a prima facie case of disability, Plaintiff is unable to satisfy his ultimate burden. Where, as here, there is no direct evidence of discrimination, Ohio courts apply the *McDonnell Douglas* burden-shifting framework. *See Jaber v. FirstMerit Corp.*, 2017-Ohio-277, 81 N.E.3d 879, 886 (Ohio Ct. App. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Upon an employee's showing of a prima facie case of disability discrimination, the burden shifts to the employer to set forth a legitimate,

13

nondiscriminatory reason for the adverse action taken. *Hood v. Diamond Prods., Inc.*, 74 Ohio St. 3d 298, 658 N.E.2d 738, 741 (1996). If the employer presents a nondiscriminatory reason for the adverse employment action, the burden shifts back to the employee to demonstrate that the stated reason was pretext for impermissible discrimination. *Id.* at 742.

Defendant Nationwide is able to satisfy its burden by articulating a legitimate nondiscriminatory reason for Plaintiff's discipline and demotion. After considering the content and timing of Plaintiff's email correspondence with Defendants Penwell and Glinski following their OAR complaint against him, Defendant Nationwide determined that Plaintiff violated its no retaliation policy, issued an FWN, and demoted him to a non-supervisory position.

The burden shifts to Plaintiff to provide evidence of pretext.

To demonstrate pretext, Plaintiff must show that Defendant Nationwide's proffered reason for its adverse employment action "was not the real reason for its action, *and* that the [] real reason" was discrimination. *Marshall v. Belmont Cnty. Bd. of Comm'rs*, 110 F. Supp. 3d 780, 800-01 (S.D. Ohio 2015), *aff'd*, 634 Fed. App'x 574 (6th Cir. 2016) (quoting *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc)). "If an employer has an honest belief in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012) (internal quotation marks omitted). But this does not require "that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

14

Here, after conducting a thorough investigation, Defendant Nationwide honestly believed that Plaintiff retaliated against Defendants Penwell and Glinski for reporting his jury duty comments to OAR, and they disciplined him accordingly.

Plaintiff provides no evidence that his alleged disability was the true reason for his demotion. His bare assertion that he was replaced by a non-disabled, less experienced employee and bald response in opposition that "[p]retext is set forth in detail above" (ECF No. 65 at 2410) will not suffice to create a genuine dispute of material fact at the summary judgment stage. The record evidence clearly establishes that he was demoted because he violated Nationwide's no retaliation policy and not because of his alleged disability. Defendant Nationwide is therefore entitled to summary judgment on his disability discrimination claim.

## V.    Defamation Claim (Count Five)

Plaintiff further alleges that Defendants Penwell and Glinski acted with actual malice by knowingly making a false and defamatory statement to OAR about his jury avoidance comments, which resulted in his demotion.[5] (Compl. ¶¶ 71–75.)

To succeed on his defamation claim, Plaintiff must establish each of the following elements:  (1) a false and defamatory statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) the statement was defamatory per se or caused special harm to the plaintiff. *Casale v. Nationwide Children's Hosp.*, No. 2:11-cv-1124, 2015 U.S. Dist. LEXIS 190751, at *22 (S.D. Ohio Sep. 25,

---

[5] The Court notes that in his response in opposition to Defendants' motion for summary judgment, Plaintiff attempts to enlarge the scope of his defamation claim against Defendants Penwell and Glinski by including the emails they sent OAR concerning his retaliatory behavior following OAR's initial investigation of his jury duty comments without amending his complaint.  (ECF No. 65 at 2415.)  But as discussed previously, Plaintiff cannot change his claim in an effort to avoid summary judgment, and the Court will not consider these emails in its analysis of his defamation claim against Defendants Penwell and Glinski.

2015) (citing *Gosden v. Louis*, 116 Ohio App. 3d 195, 206, 687 N.E.2d 481 (Ohio Ct. App. 9th Dist. 1996)).

Plaintiff's defamation claim fails, as Defendants Penwell and Glinski's statements are protected by a qualified privilege, which Plaintiff cannot overcome.

"Where the circumstances of the occasion for the alleged defamatory communications are not in dispute, the determination of whether the occasion gives the privilege is a question of law for the court." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 7, 651 N.E.2d 1283, 1290 (1995). As the Supreme Court of Ohio explains, "A qualified privilege is recognized . . . where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Hahn v. Kotten*, 43 Ohio St. 2d 237, 244, 331 N.E.2d 713, 718 (1975).

The essential elements of a privileged communication are: 1) good faith, 2) an interest to be upheld, 3) a statement limited in its scope to this purpose, 4) a proper occasion, and 5) publication in a proper manner and to proper parties only. *Id.* at 719. "Generally, a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App. 3d 73, 81, 603 N.E.2d 1126, 1131 (1991).

Here, Defendants Penwell and Glinski, along with their employer, Defendant Nationwide, had a shared interest in keeping the workplace free of conduct violating Nationwide's "No Harassment, Discrimination, or Retaliation Policy," and Defendants Penwell and Glinski's communications to OAR were intended to protect that interest. Nationwide's policy obligates managers, such as Defendants Penwell and Glinski to report any incident that is inconsistent with

the policy, or they may be subject to disciplinary action, including termination. (ECF No. 41-1 at 533.)  Aware of this obligation, Defendant Penwell made a good faith report concerning Plaintiff's jury duty comments.  Defendant Glinski was also obligated to share what she heard and did so in good faith.  Defendants Penwell and Glinski limited their statements to Plaintiff's alleged policy violation, made them on the proper occasion, and reported Plaintiff's comments in an appropriate manner and to the appropriate party.  Defendants Penwell and Glinski's communication to OAR is therefore protected by qualified privilege.

Though the record evidence clearly establishes Defendant Penwell and Glinski's entitlement to qualified privilege, Plaintiff may overcome this privilege by demonstrating "that the published statements were untrue and made with actual malice, which requires proof by clear and convincing evidence that the defendant, acting with ill will or spite, made the statements either with knowledge that they were false or with reckless disregard for their truth."  *Blesedell v. Chillicothe Tel. Co.*, No. 2:13-cv-451, 2015 U.S. Dist. LEXIS 57418, at *65–68 (S.D. Ohio May 1, 2015), *aff'd, Blesedell v. Chillicothe Tel. Co.*, 811 F.3d 211, 226 (6th Cir. 2016).

Even viewing the evidence in the light most favorable to Plaintiff, he cannot point to record evidence of actual malice.  Contrary to Plaintiff's assertions otherwise, Ms. Anand never concluded that he did not use the highly offensive racial slur.  She merely decided to not discipline him and closed the case.

Plaintiff also misrepresents fellow Nationwide employee Kyle Waltz's deposition testimony.  Plaintiff claims "Kyle Waltz does not remember Blank using the word," (ECF No. 65 at 2419), which he alleges, establishes that Defendants Penwell and Glinski's statement to OAR was false.  While the record evidence shows that Mr. Waltz does not remember Plaintiff using the offensive word, this is not because he did not hear Plaintiff use the word during Plaintiff's

discussion with Defendants Penwell and Glinski.  Rather, it is because he could not hear any of what Plaintiff and Defendants Penwell and Glinski were discussing, which prompts a different conclusion than the one Plaintiff is asking the Court to draw.

When asked if he ever heard Plaintiff use the offensive word, Mr. Waltz testified, "I did not hear what they were talking about.  [B]eyond . . . hi, hello, how are you, I couldn't say as to – as to what anybody said specifically other than myself." (Defs.' Ex. B, Waltz Dep. 11, ECF No. 71 at 2669.)  Plaintiff has therefore not established by clear and convincing evidence that Defendants Penwell and Glinski's statements were false or made with reckless disregard for their truth, and he cannot overcome Defendants Penwell and Glinski's entitlement to qualified privilege.

Moreover, the harm that Plaintiff alleges here, his demotion, did not result from Defendants Penwell and Glinski's statements to OAR regarding his jury duty comments.  Instead, Plaintiff was later demoted following a subsequent investigation into his retaliatory behavior after OAR closed its investigation of his alleged jury duty comments.  *See McNett v. Worthington,* 2011-Ohio-5225, ¶ 24 (finding that plaintiff "was not terminated on the basis of statements made by anyone else.  He was terminated based upon actions he himself took.")  Accordingly, Defendants Penwell and Glinski are entitled to summary judgment on Plaintiff's defamation claim.

## VI.    FMLA Interference Claim (Count Nine)

Lastly, Plaintiff also claims that "by investigating, interviewing, disciplining and demoting and requesting Plaintiff's return to work to his demoted position [Defendant Nationwide] interfered with Plaintiff's FMLA rights to which he was entitled." (Compl. ¶ 114.)

The Family Medical Leave Act ("FMLA ") entitles "eligible employees" to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. *See* 29 U.S.C. § 2612(a)(1).  To prevail on his claim for interference with his FMLA rights, Plaintiff has the burden of proving: (1) he was an eligible employee under the statute, (2) Defendant Nationwide was a covered employer under the statute, (3) he was entitled to leave under FMLA, (4) he gave Defendant Nationwide notice of his intent to take leave, and (5) Defendant Nationwide denied him entitled FMLA benefits or interfered with FMLA rights to which he was entitled. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.,* 594 F.3d 476, 482 (6th Cir. 2010) (citation omitted). The only element in dispute is whether Defendant Nationwide interfered with Plaintiff's entitlement to his FMLA rights.

Plaintiff takes issue with the fact that after his request for FMLA leave was approved on April 9, 2018 at 11:44 AM, he participated in a scheduled phone call that same day at 2:00 PM, where he learned of his demotion. (ECF No. 65 at 2413.)  Plaintiff asserts that demoting him via telephone conference while he was on FMLA leave interfered with his entitlement to his FMLA rights. (*Id.*)  Even viewing the evidence in the light most favorable to Plaintiff, the Court disagrees.

An abundance of cases makes clear that minimal contact between an employer and its employee while the employee is on FMLA leave does not interfere with the employee's ability to exercise his or her FMLA rights.  *See Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 632 (6th Cir. 2018) (finding one instance where the employer initiated contact as not rising to the level of actionable interference); *Womack v. Brown-Forman Corp.*, 897 F. Supp. 2d 646, 659 (E.D. Tenn. 2012) (concluding that since the plaintiff continued taking FMLA leave after her demotion, her demotion did not interfere with her FMLA rights); *see also Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 654 Fed. App'x 675, 680 (6th Cir. 2016) (explaining that "multiple phone calls from an employer

19

and demands to complete more than simple tasks could rise to the level such that an employee's FMLA leave becomes unjustifiably disrupted").

Accordingly, Plaintiff has failed to demonstrate that Defendant Nationwide's single phone call interfered with his ability to exercise his FMLA rights.  Defendant Nationwide is therefore entitled to summary judgment on Plaintiff's FMLA interference claim.

## VII.    CONCLUSION

For the reasons stated above, Defendants' motion (ECF No. 41) is **GRANTED** in its entirety.  Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  The Clerk is instructed to enter judgment in favor of Defendants and close the case.


**IT IS SO ORDERED.**


/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 9, 2020